IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ANDREW MUETING, et al.,

    Plaintiffs,

    v.

UNIFIED SCHOOL DISTRICT NO. 443, et al.,

    Defendants.

Case No. 2:24-cv-02381-HLT-BGS

**MEMORANDUM AND ORDER**

Plaintiff Andrew Mueting, who is legally blind and has autism and other disabilities, attended a public school system that struggled to meet his unique needs. The school district, in collaboration with a special education cooperative (collectively "the districts"), arranged for Andrew to attend a private preparatory school for two years of high school. But Andrew and his parents contend that the districts, two administrators, and the preparatory school deprived him of meaningful access to public education and reasonable accommodations and treated him differently than similarly situated students. The allegations span five years, from 2019 through 2024.

Andrew brings claims for disability discrimination and retaliation under the Americans with Disabilities Act ("ADA")[1] and the Rehabilitation Act, for violation of his Fourteenth Amendment right to equal protection, and for breach of contract. His parents join him in bringing the retaliation claim and one of the breach-of-contract claims. Events from the first two of the relevant school years are also the subject of an ongoing administrative proceeding for denying

---

[1] The governing law is now the ADA Amendments Act of 2008 ("ADAAA"). The Court applies the amended law and amended regulations. But the Court continues to use the term "ADA" for ease of reference.

Andrew a free appropriate public education ("FAPE") in violation of the Individuals with Disabilities Education Act ("IDEA").

The districts and two administrators (Trina Schmidt and Jason Wright) move for judgment on the pleadings (Doc. 40) on the discrimination, retaliation, and equal protection claims.[2] They all raise timeliness challenges, and the administrators assert qualified immunity. The Court denies the motion in part because timeliness issues do not warrant judgment on the pleadings on Plaintiffs' claims for discrimination, retaliation, or equal protection. The Court grants the motion in part because Plaintiffs have not met their burden to show the administrators should be denied qualified immunity. And the Court grants the motion as to the equal protection claim against the districts for lack of an underlying constitutional violation.

I.  **BACKGROUND**

Andrew attended his first two years of high school in Dodge City, Kansas, from 2019-2021. His district, Defendant Unified School District No. 443 ("USD 443"), and special education cooperative, Defendant Southwest Kansas Area Cooperative District No. 613 ("SKACD"), arranged for Andrew to attend Brehm Preparatory School in Illinois for the next two years, 2021-2023. Andrew then returned to Dodge City for the 2023-2024 school year. Andrew and his parents bring claims based on Defendants' actions during all five years.

Defendants raise the statute of limitations as a defense. A timeline of events as alleged in the operative complaint is helpful in evaluating the parties' arguments.

- <u>July 10, 2018 (before Andrew began high school)</u>: Andrew's parents, Nick and Paula Mueting, filed an administrative request for a due process hearing against the districts. They claimed that Andrew's Individualized Education Program ("IEP") did not confer on him a FAPE. This administrative proceeding advanced through a second appeal filed by counsel on June 14, 2019, in the District of Kansas, Case No. 2:19-cv-02317-KHV-KGG.

---

[2] Southwest Kansas Area Cooperative District No. 613, Schmidt, and Wright filed the motion. Unified School District No. 443 moved to join. Doc. 44. The Court grants the motion to join.

The Muetings and the districts entered into a settlement agreement on February 13, 2020. Doc. 30 ¶¶ 16-19. The agreement required the districts to identify and place Andrew at a school that could meet his needs and to develop an IEP with that in mind.

- 2019-2020 and 2020-2021 School Years: Andrew attended Dodge City Public High School. The districts failed to provide accurate and functional brailled coursework, a functioning braille notetaking device, and necessary services, including a Teacher for Visually Impaired ("TVI").[3] Staff ignored Andrew's requests for help. *Id.* ¶ 44. The districts also caused Andrew to perseverate by forcing his exposure to Gothic literature, a lesson about Malala Yousafza, and lessons of injustice and violence. *Id.* ¶ 61.

    o July 1, 2020: Schmidt interfered with Andrew's placement at Perkins School for the Blind when she instructed her subordinate that the districts would not suggest residential treatment and would not write it into Andrew's IEP at that time. *Id.* ¶¶ 48-50. Schmidt again interfered in the fall of 2020 when she sent a letter to Perkins and referred to Plaintiffs as litigious, disagreeable people. *Id.* ¶ 54. Perkins denied Andrew enrollment.

    o May 26, 2021: Andrew's 2020-2021 school year ended.

- 2021-2022 and 2022-2023 School Years: Andrew attended Brehm, a preparatory day and boarding school for students with learning disabilities, through placement by the districts. The districts and Brehm failed to provide Andrew accurate and functional brailled coursework, a functioning braille notetaking device, TVI, training by an Orientation & Mobility instructor ("O&M"), hearing instruction, CCTV, a braille embosser, and related services. *Id.* ¶ 65. Brehm did not allow Andrew to attend a math class. *Id.* ¶ 72. And Defendants did not discuss Andrew's IEP or goals after December 2021. *Id.* ¶ 71.

    o September 30, 2021: Plaintiffs filed another administrative request for a due process hearing against the districts. Plaintiffs raised new FAPE claims dating back to December 2019. This action resulted in an April 4, 2024 Hearing Officer Decision. It is unclear whether a Review Officer has issued a decision. Plaintiffs believed during the pendency of the administrative hearings that they were required to exhaust all administrative claims before filing a civil action in federal court. *Id.* ¶ 93.

    o September 17, 2022: Andrew turned 18 years old.

    o March 21, 2023: The Supreme Court issued *Luna Perez v. Sturgis Public Schools*, 598 U.S. 142 (2023). *Luna Perez* held that a plaintiff who only sought compensatory damages for an ADA violation based on a FAPE denial need not first administratively exhaust.

---

[3] Plaintiffs sometimes use the term "braille" and sometimes use the term "brailled." The Court has attempted to mimic Plaintiffs' usage, as these are Plaintiffs' allegations.

3

- 2023-2024 School Year: The districts proposed to place Andrew at SAAVI Services for the Blind, which is a rehabilitation training center in Arizona. They proposed remote academic instruction through the School for Young Performers in New York. *Id.* ¶ 74. In the end, Andrew attended school in Dodge City for the year. During that time, he did not receive services or instruction from the districts. *Id.* ¶ 91. The districts tried to force Andrew's graduation by adding unearned credits to his transcript. *Id.* ¶ 84. Plaintiffs requested an amendment to Andrew's records, but USD 443 refused a hearing under the Family Educational Rights and Privacy Act because of Plaintiffs' pending special education lawsuit. *Id.* ¶¶ 86-87. USD 443 still has not revised Andrew's transcript. *Id.* ¶ 90.

    o September 20, 2023: The IEP team met to finalize Andrew's IEP and to discuss placement and the proposed instruction. *Id.* ¶ 76. But they could not finalize Andrew's IEP. *Id.* ¶ 77.

    o September 29, 2023: The districts advised Plaintiffs by letter that Andrew would return to USD 443. *Id.* ¶ 79. Schmidt was one author of the letter, which smacked of retaliation. *Id.* ¶¶ 79-80. The letter also advised Plaintiffs that Andrew must begin attending Dodge City Public High School by October 9, 2023, or he would be disenrolled from USD 443. *Id.* ¶ 82. The districts did not have braille books, assistive technology, or qualified instructors at that time. *Id.* ¶ 83.

- August 16, 2024: Plaintiffs filed this case.

Plaintiffs seek various forms of relief for their claims. Plaintiffs seek compensatory and punitive damages, attorney's fees and costs, declaratory judgment, and injunctive relief including (1) "an order enjoining [D]efendants from implementing or enforcing any policy, procedure, and/or practice that denies blind or visually impaired students meaningful access to and full and equal enjoyment of [D]efendants' facilities, services or programs"; (2) "an order requiring [D]efendants to train all their employees, staff, and other agents on a regular basis about the rights of individuals who are blind or visually impaired under the IDEA, ADA, and the Rehabilitation Act"; (3) "an order requiring [D]efendants to train their employees, staff, and other agents on a regular basis regarding providing appropriate TVI instruction and functional braille in all subjects to students"; and (4) "an order enjoining [D]efendants from applying credits to Andrew's transcript for courses he has not taken or for grades he has not earned." Doc. 30 at 32. They do not delineate which forms of relief (if any) are also available to them in their IDEA administrative proceeding.

4

## II. STANDARD

A motion for judgment on the pleadings under Rule 12(c) is evaluated under the same standard that governs a motion under Rule 12(b)(6). *Ward v. Utah*, 321 F.3d 1263, 1266 (10th Cir. 2003). A complaint survives a Rule 12(b)(6) motion to dismiss when it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation and citation omitted). A claim is plausible if there is sufficient factual content to allow a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. In making this determination, a court must accept as true all well-pleaded allegations in the complaint, but it does not accept legal conclusions or conclusory statements. *Id*. at 678-79.

## III. ANALYSIS

At issue are three claims: (1) Count I, Andrew's claim for disability discrimination against the districts; (2) Count II, Andrew's Fourteenth Amendment equal protection claim, which he brings under 42 U.S.C. § 1983 against the districts, Schmidt, and Wright; and (3) Count III, the claim for disability retaliation brought by Andrew and his parents against the districts. Plaintiffs support all three claims with factual allegations that span five years.

### A. Statute of Limitations

Defendants ask the Court to rule that Counts I, II, and III are time-barred in their entirety because they are based solely on events from Andrew's first two years of high school (2019-2020 and 2020-2021), which is outside the two-year statute of limitations.[4] Plaintiffs clarify that their claims are <u>not</u> limited to accrual in Andrew's first two years of high school. The Court agrees that Plaintiffs' claims could ostensibly cover all five years. Additionally, there does not seem to be any

---

[4] The parties do not dispute that a two-year statute of limitations applies to Counts I through III.

dispute that claims based on events occurring after August 22, 2022 (two years before the case was filed), are timely. This fact alone warrants denial of Defendants' motion for judgment on the pleadings. In other words, Defendants are not entitled to judgment on claims that are (at least) timely in part.

The question then becomes how to deal with the events occurring before August 22, 2022. Highly summarized, Plaintiffs contend that events from before August 22, 2022, are timely because those events were tolled while they were exhausting administrative remedies. Defendants argue tolling does not rescue these claims because Plaintiffs have not diligently pursed their rights and nothing prevented them from bringing these claims within the statute of limitations.

The Court has spent considerable time and resources trying to untangle the timeline in this case, with little success given the wide-ranging and imprecise allegations in the amended complaint. The Court's analysis has been complicated by several factors. These include the broad scope of Plaintiffs' allegations, Defendants' construction of those allegations, the unclear status of the administrative case, and the impact of the 2023 *Luna Perez v. Sturgis Public Schools* decision. There are also some things that are unclear from the pleadings or the briefs, including:

- the status of the administrative case;
- whether Plaintiffs are pursuing additional relief based on any administrative ruling;
- the relation of the claims in the administrative case to the claims in this case;
- the scope of Plaintiffs' claims;
- specific dates of the acts of discrimination and retaliation at issue in this case and when claims based on those acts accrued;[5]

---

[5] Without this information, the Court is unable to conclude whether the continuing violation doctrine applies, as Plaintiffs argue.

- the relief sought by Plaintiffs;

- the diligence with which Plaintiffs have pursued the claims in this lawsuit; and

- what grounds exist to toll events not part of the administrative case.

Each of these considerations impacts how the Court analyzes the claims and applies the relatively new law set forth in *Luna Perez*. Depending on these unknowns, the scope of Plaintiffs' claims may very well include events going back as far as 2019. But it is also possible that Plaintiffs' claims are either premature (depending on the status of the administrative case or any subsequent administrative actions) or untimely (depending on when specific actions occurred and what relief Plaintiffs seek). These are knots the Court simply cannot untie on the current record.

For these reasons, the Court denies Defendants' motion for judgment on the pleadings to the extent it seeks to limit the facts that can support the claims in the amended complaint.[6] But this denial is without prejudice. Discovery and the final pretrial order will provide the parties (particularly Plaintiffs) the opportunity to define the claims in this case. Once there is more clarity, Defendants may renew their challenge that certain claims are untimely.

### B. Qualified Immunity

The administrators assert qualified immunity for Plaintiffs' § 1983 claims. Qualified immunity is meant to protect public servants—"all but the plainly incompetent or those who knowingly violate the law"—from the burdens of lawsuits. *Lewis v. Tripp*, 604 F.3d 1221, 1224-25 (10th Cir. 2010). Once a defendant asserts qualified immunity, the plaintiff must show that: (1) the defendant's actions violate a constitutional right and (2) the constitutional issue was clearly established at the time of the defendant's actions. *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir.

---

[6] Many of these arguments target particular facts, not claims, which makes judgment on the pleadings inappropriate.

2001). Where qualified immunity is raised in a motion to dismiss (or, in this case, a motion for judgment on the pleadings), a court analyzes the issue based on the allegations in the complaint. *Myers v. Brewer*, 773 F. App'x 1032, 1036 (10th Cir. 2019) ("At the motion to dismiss stage, it is the defendant's conduct as alleged in the complaint that is scrutinized for objective legal reasonableness." (internal quotation and citation omitted)). "If the plaintiff fails to satisfy either part of the inquiry, the court must grant qualified immunity." *Knopf v. Williams*, 884 F.3d 939, 944 (10th Cir. 2018) (citation omitted).

Schmidt and Wright assert qualified immunity for Andrew's equal protection claim against them. They contend that Andrew fails to state a constitutional violation or identify any clearly established law that would have alerted Schmidt and Wright that their conduct violated his constitutional rights—particularly because "class of one" claims are unsuitable in the educational context. The Court first looks at whether Andrew states a constitutional violation (no), and alternatively looks at whether he has identified any clearly established law (also no).

### 1. Constitutional Violation

"In order to assert a viable equal protection claim, plaintiffs must first make a threshold showing that they were treated differently from others who were similarly situated to them." *Barney v. Pulsipher*, 143 F.3d 1299, 1312 (10th Cir. 1998); *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1404 (10th Cir. 1997). The Tenth Circuit has taken a cautious approach in "class of one" cases, wary of "turning even quotidian exercises of government discretion into constitutional causes." *Jicarilla Apache Nation v. Rio Arriba Cnty.*, 440 F.3d 1202, 1209 (10th Cir. 2006). In *Jicarilla Apache Nation*, the Tenth Circuit explained that the "paradigmatic class of one case" involves "a public official inflict[ing] a cost or burden on one person without imposing it on those who are similarly situated in material respects, and does so without any conceivable basis other

than a wholly illegitimate motive." *Id*. Although it is not settled that a plaintiff must demonstrate a "subjective ill will" on the part of the government official, *id*. at 1209-10, the existence of an objectively reasonable basis for the disputed action will generally defeat a claim that the decision of the government official was "irrational and wholly arbitrary." *Id*. at 1210-11. "This standard is objective—if there is a reasonable justification for the challenged action, we do not inquire into the government actor's actual motivations." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1216 (10th Cir. 2011). Further, to prevail on this theory, a plaintiff must point to others who are similarly situated in "every material aspect." *Jicarilla Apache Nation*, 440 F.3d at 1210; *Kan. Penn Gaming*, 656 F.3d at 1216. This is an "exacting burden[ ]" because "it is exceedingly difficult to demonstrate that any difference in treatment is not attributable to a quirk of the plaintiff or even to the fallibility of administrators whose inconsistency is as random as it is inevitable." *Jicarilla Apache Nation*, 440 F.3d at 1213.

Courts have recognized that an educational dispute is not the ideal setting for a class-of-one theory. *See, e.g.*, *Coffman v. Hutchinson Cmty. Coll.*, 2019 WL 3093506, at *15 (D. Kan. 2018) (collecting cases); *see also Quarrie v. Wells*, 2019 WL 1466900, at *6 (D.N.M. 2019) (noting that *Coffman* "collect[ed] cases and [found] class-of-one claims plainly unavailable in the public education setting"). The discretionary nature of academic decisions makes the environment particularly unsuitable for constitutional review. And in Andrew's case, any comparison is further complicated by his diverse and unique needs. *See, e.g.*, Doc. 30 at ¶¶ 26 (listing Andrew's wide range of medical diagnoses), 27 (describing the elements of Andrew's vision impairment), 28 (describing Andrew's hearing loss), 29 (noting that Andrew's Autism Spectrum Disorder (high functioning) causes him to perseverate), 30 (identifying at least eight major life activities in which Andrew is limited), 33-34 (noting that Andrew is also gifted and qualified for gifted services from

the districts), & 35-40 (naming the various requirements Andrew has to meaningfully access public education). The Court agrees with the analysis in *Coffman* that the class-of-one theory is not a good fit for the public-education setting and declines to apply it under the circumstances of this case, given Andrew's highly individualized characteristics and needs. It is not plausible that Andrew's treatment can meaningfully be compared to the treatment of other students with disabilities.

But even if the Court were to presume that a class-of-one theory were appropriate in this academic setting, Andrew fails to plead facts sufficient to plausibly allege an equal-protection claim. Andrew alleges at a high level that "Defendants intentionally treated Andrew differently from other similarly situated students dating back to at least 2019 and continuing through his 2023-2024 school year, by failing to provide qualified and trained teachers and staff, unilaterally removing his access to gifted services, and failing to provide functional, timely material and devices necessary to learn." *Id.* ¶ 138. He generally alleges that "[o]ther disabled USD 443 students had access to qualified USD 443 and SKACD teachers and staff" and "[o]ther disabled USD 443 students had access to the materials and devices necessary to meaningfully access public education." *Id.* ¶ 139, 142. But Andrew does not identify his comparators or explain in any way how they were "similarly situated in every material respect." This failure is fatal to his equal protection claim.

Andrew's specific allegations against Schmidt and Wright individually do not help his claim. He alleges that Schmidt allowed, supported, ratified, directed, and attempted to hide the denial of braille documents and textbooks, instruction, and devices by Brehm and the districts. *Id.* ¶ 155. He also alleges that Schmidt refused to provide instructors, documents, textbooks, necessary devices, and services to Andrew. *Id.* ¶ 156. He alleges that she misrepresented that she had mailed

10

Andrew's devices to Brehm. *Id.* ¶ 156. And he alleges that Schmidt directed Brehm to eliminate services from Andrew's plan if Brehm was not providing them.

As for Wright, Andrew alleges that he (1) openly questioned Andrew's diagnosis; (2) perceives special-education students as "feel[ing] entitled to the intensive remediation and support they" receive through their services; (3) attempted to steer an IEP team meeting to find that Andrew did not qualify for special education; (4) allowed, supported, ratified, and directed Andrew's forced exposure to topics that would cause perseveration; and (5) influenced colleagues to erroneously believe that Andrew was adequately accessing his education. *Id.* ¶¶ 152-154.

These allegations, accepted as true, may be unprofessional, insensitive, and rude. But undesirable conduct does not automatically equate to unconstitutional conduct. Again, the missing link here is a comparator. A plaintiff who alleges an equal protection claim that is not based on a suspect or protected class (such as disability) must also identify a comparator who was treated differently. Andrew has not met this burden. He has not identified another student who shares his characteristics, "similarly situated in every material respect." Schmidt and Wright are entitled to qualified immunity because Andrew does not plead a viable constitutional violation.

Andrew's failure to state a constitutional violation by the individuals necessarily means that he does not state a claim against the districts for denial of equal protection. There must be an underlying constitutional violation for the districts to be liable. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *see also Jennings v. City of Stillwater*, 383 F.3d 1199, 1205 n.1 (10th Cir. 2004). Andrew's failure to plead a viable constitutional violation based on equal protection dooms his *Monell*[7] claim against the districts and the claim is dismissed.

---

[7] *Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

### 2. Clearly Established Law

Even if these allegations were sufficient to state a constitutional violation, Andrew has not pointed to any clearly established law. He cites nothing that would put the administrators on notice that they violated Andrew's constitutional rights.

Andrew cites an unpublished opinion from New Mexico as evidence of clearly established law. *See Martinez v. Espanola Pub. Sch.*, 2005 WL 8163414, at *1 (D.N.M. 2005). But "an unpublished opinion provides little support for the notion that the law is clearly established on a given point." *Morris v. Noe*, 672 F.3d 1185, 1197 n.5 (10th Cir. 2012) (internal quotation marks omitted). This is even more true when the unpublished (district court) opinion contradicts another unpublished (district court) opinion from this district. *See Coffman*, 2019 WL 3093506, at *15. Andrew also string cites to several other cases but offers little explanation how they put the administrators on notice of clearly established law. Doc. 55 at 13 (citing *Bd. of Tr. Of Univ. of Ala. v. Garrett*, 531 U.S. 356, 367 (2001); *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 446 (1985); *Stevens v. Ill. DOT*, 210 F.3d 732, 737-38 (7th Cir. 2000); *T.Z. v. Tippecanoe Sch. Corp.*, 2023 WL 403773 (N.D. Ind. 2023); *Sims v. Bd. of Educ.*, 2016 WL 4440251 (S.D. Ohio 2016); *MAP v. Bd. of Trs.*, 2013 WL 5386897 (D. Colo. 2013); *Doe v. Bd. of Trs. of Univ. of Ill.*, 429 F. Supp. 2d 930, 944 (N.D. Ill. 2006); *Edwards v. City of Pittsburg*, 2000 WL 1483358 (D. Kan. 2000)). He instead broadly states, "Supreme Court precedent and the weight of authority demonstrate that discrimination based on a student's disability, without a rational purpose, violates the Equal Protection Clause under clearly established law." *Id.* Broad statements of general legal principles are insufficient to show that a law is clearly established such that a reasonable official should be aware that his actions violate that law. The question for the Court is "whether the violative nature of particular conduct is clearly established . . . in light of the specific context of

the case, not as a broad general proposition." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam) (quotations omitted). A plaintiff cannot simply rely on broad propositions of the law or cases that are similar only at a high level of abstraction. This is precisely what Andrew is doing here. Both Schmidt and Wright are alternatively entitled qualified immunity under the clearly established prong.

## IV.  CONCLUSION

THE COURT THEREFORE ORDERS that the motion for judgment on the pleadings (Doc. 40) is GRANTED IN PART AND DENIED IN PART. Schmidt and Wright are dismissed with prejudice based on qualified immunity. *See Merryfield v. Howard*, 2023 WL 2682353, at *16 n.15 (D. Kan. 2023) (citing authority and explaining why dismissal under Rule 12(c) is with prejudice).[8] And the Court grants the motion as to Count II and dismisses with prejudice this claim against the districts for lack of an underlying constitutional violation. The remainder of Defendants' motion is denied. The scope of Plaintiffs' claims may ultimately be limited by the statute of limitations, but the Court cannot make this determination on the record before it.

THE COURT FURTHER ORDERS that USD 443's motion to join the motion (Doc. 44) is GRANTED.

IT IS SO ORDERED.

Dated: May 6, 2025            /s/ *Holly L. Teeter*
                              HOLLY L. TEETER
                              UNITED STATES DISTRICT JUDGE

---

[8] The Court also dismisses the claim against Schmidt and Wright with prejudice because Plaintiffs have already amended their complaint once. They did not seek further amendment under Rule 15 in response to Defendants' motion. The Court finds that further amendment would be futile and dismisses the claim against Schmidt and Wright with prejudice. *See Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1282-83 (10th Cir. 2021) (affirming dismissal with prejudice when the plaintiff failed to amend as a matter of right or seek leave to amend under the applicable rules).

13