IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ANDREW MUETING, et al.,

    Plaintiffs,

    v.

UNIFIED SCHOOL DISTRICT NO. 443, et al.,

    Defendants.

Case No. 2:24-cv-02381-HLT-BGS

**MEMORANDUM AND ORDER**

    Three plaintiffs bring this case: Andrew Mueting and his parents Nick and Paula Mueting. This order addresses only the claims filed by Andrew against Brehm Preparatory School. Andrew claims that Brehm discriminated against him based on his disabilities and breached a contract with Kansas school districts to provide Andrew with certain educational services and aids.

    Brehm moves to dismiss. Doc. 45. Brehm makes several arguments but only two are at issue:[1] (1) whether the Court has personal jurisdiction over Brehm and (2) whether Andrew's third-party beneficiary claim for breach of contract is a non-viable educational malpractice claim. The Court finds Andrew meets his burden of demonstrating that the Court has personal jurisdiction over Brehm. And he plausibly states a claim for breach of contract.

---

[1] The three other arguments raise issues that are moot based on representations in Plaintiffs' response brief. Standing is not an issue because only Andrew asserts a claim in Count I. Compensatory damages for emotional distress under Title II of the ADA or Section 504 are not at issue because Plaintiffs do not seek damages for emotional distress under these statutes. And whether Brehm is a public entity is not at issue because Plaintiffs bring their claim for disability discrimination against Brehm under Section 504, not Title II of the ADA.

I.      BACKGROUND

Andrew and his parents, Nick and Paula, are Kansas citizens. Andrew is legally blind. He also has other disabilities and received special education for his visual impairment and autism. He is now 20 years old.

Andrew used to attend school in Kansas. His school district was the Unified School District No. 443 ("USD 443"). The Southwest Kansas Area Cooperative District No. 613 ("SKACD") is a special education cooperative in Kansas. It collaborates with USD 443 to provide special education, services, and aids to Kansas students. The districts hired a consultant to find a school that would meet Andrew's needs. The consultant recommended Brehm, a preparatory day and boarding school for students with learning disabilities. Brehm is in Illinois.

Brehm's admissions director exchanged many emails about Andrew's enrollment with SKACD. Brehm requested that SKACD send it Andrew's education records. SKACD did. Brehm invited Plaintiffs via email to visit Brehm. Plaintiffs received the email in Kansas, responded, and visited a few weeks later. Paula exchanged several emails with Brehm about the visit. Shortly after the visit, Andrew had an IEP team meeting hosted in Kansas. Brehm's head of school participated remotely via Zoom. Brehm requested information about Andrew from SKACD, USD 443, and Plaintiffs by multiple emails. This was so Brehm could decide whether to offer Andrew enrollment. Brehm accepted Andrew and emailed Plaintiffs and others its decision.

Brehm entered a contract with SKACD to provide instructors and certain services, materials, and devices to Andrew while he attended school. Brehm then communicated its commitment to Plaintiffs in Kansas. Plaintiffs relied on Brehm's commitment and sent Andrew to Brehm because of it. SKACD paid Brehm for Andrew's services, room, and board with Kansas taxpayer funds upon receiving invoices from Brehm. SKACD confirmed in one email to Brehm

2

that Andrew would remain a special education student in the Kansas database while attending Brehm in Illinois. Andrew attended Brehm during the 2021-2022 and 2022-2023 school years.

Brehm's administrators communicated with Paula and Nick via emails, calls, and remote meetings while Andrew attended Brehm. Paula and Nick received and responded to these communications from Kansas, with limited exceptions. Brehm administrators also communicated with SKACD in Kansas throughout the years about Andrew's education and/or services, materials, or devices. SKACD produced over 1,000 pages of emails and attachments between itself and Brehm in a related administrative proceeding.

Andrew currently resides in Kansas. He should have graduated high school and entered the workforce. But Andrew alleges that Brehm's conduct kept him from progressing academically and graduating. Specifically, Andrew alleges that Brehm discriminated against him because of his disability and breached its contract with SKACD by not providing the instructors, services, and aids as contracted.

## II.   STANDARD

Brehm moves to dismiss Andrew's claims against it based on Rule 12(b)(2) and 12(b)(6).

### A.   Rule 12(b)(2)

Brehm challenges the Court's personal jurisdiction over it. A plaintiff bears the burden to establish personal jurisdiction over each defendant. *See OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998). But the plaintiff need only make a prima-facie showing of personal jurisdiction when a court decides a Rule 12(b)(2) motion on the basis of affidavits and other written materials. Courts assume the allegations in the complaint to be true to the extent uncontradicted by the defendant's affidavits, and courts resolve all factual disputes in the plaintiff's favor. *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011).

A plaintiff must satisfy both the state long-arm statute and constitutional due process to establish personal jurisdiction over a defendant. *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006). But the Kansas long-arm statute reaches as far as federal due process will allow, which effectively narrows the issue to whether assertion of personal jurisdiction over the defendant would violate due process. *OMI Holdings*, 149 F.3d at 1090.

Due process allows a federal court to exercise personal jurisdiction over a non-resident defendant if there are "minimum contacts" between the defendant and the forum. *World-Wide Volkswagen, Co. v. Woodson*, 444 U.S. 286, 291 (1980). The "minimum contacts" standard may be met in two ways: through specific personal jurisdiction or general personal jurisdiction. *OMI Holdings*, 149 F.3d at 1090-91. Andrew tacitly concedes that the Court lacks general personal jurisdiction over Brehm. The Court therefore focuses on specific personal jurisdiction.

Specific personal jurisdiction has two requirements. First, the defendant must have purposefully directed its activities at residents of the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). Second, the suit must arise out of the actions connecting the defendant with the forum. *Id.* If a plaintiff satisfies both requirements, a defendant can try to establish that exercising jurisdiction would violate traditional notions of fair play and substantial justice. *OMI Holdings*, 149 F.3d at 1091.

### B.     Rule 12(b)(6)

Brehm also argues that Andrew fails to state a claim for breach of contract. A complaint survives a Rule 12(b)(6) motion to dismiss when it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible if it contains sufficient factual content to allow a court "to draw the reasonable inference that the

4

defendant is liable for the misconduct alleged." *Id.* The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotations omitted). A court undertaking this analysis accepts as true all well-pleaded allegations in the complaint but need not accept legal conclusions. *Id.* Likewise, conclusory statements are not entitled to the presumption of truth. *Id.* at 678-79.

### III. ANALYSIS

The Court first evaluates whether Andrew has met his burden to demonstrate this Court's personal jurisdiction over Brehm (he has). The Court then turns to whether Andrew's breach-of-contract claim is an educational malpractice claim in disguise (it is not).

#### A. Personal Jurisdiction

The Court's personal jurisdiction over Brehm depends on whether Brehm purposefully directed activities at Kansas, creating substantial connections from which Andrew's claims arise. Andrew brings two claims against Brehm: disability discrimination and breach of contract. There is no dispute that these claims arise from Brehm's connections. The only dispute is whether Brehm purposefully directed its activity at Kansas.

In the contract context, the first requirement that a defendant "purposefully directed" activities at residents of the forum state is generally phrased as "purposeful availment." *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 904 n.11 (10th Cir. 2017); *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1071 (10th Cir. 2008) ("In the tort context, we often ask whether the nonresident defendant 'purposefully directed' its activities at the forum state; in contract cases, meanwhile, we sometimes ask whether the defendant 'purposefully availed'

5

itself of the privilege of conducting activities or consummating a transaction in the forum state."). Both phrases get at the same point, namely ensuring that an out-of-state party is not called into court based on "random, fortuitous, or attenuated contacts" with the forum. *Dudnikov*, 514 F.3d at 1071. The Court thus examines the quantity and quality of Brehm's personal contacts with Kansas as they relate to Andrew's claims. *OMI Holdings*, 149 F.3d at 1092.

The allegations in the amended complaint demonstrate Brehm's steady stream of contacts with Kansas. Andrew alleges, among other things, that Plaintiffs and the districts and their administrators are citizens of and located in Kansas. Brehm is a citizen of Illinois but interacted extensively with Plaintiffs and the districts in Kansas over the course of the relationship. The impacts of Brehm's alleged actions were also felt largely in Kansas. But this is not all that Andrew presents. He also offers an extensive record (largely from administrative proceedings) from which the Court can evaluate the quality of Brehm's contacts with Kansas. SKACD produced over 1,000 pages of emails and attachments between itself and Brehm. Brehm does not challenge this record or present anything to counter it.[2]

Brehm's admissions director exchanged many emails about Andrew's enrollment with SKACD in Kansas. Of course, generally, emails are insufficient on their own to establish minimum contacts. *Far W. Capital, Inc. v. Towne*, 46 F.3d 1071, 1077 (10th Cir. 1995). But a collection of basic emails is not all Andrew has. Brehm requested Andrew's education records, and SKACD sent them from Kansas. Brehm invited Plaintiffs to visit Brehm. Plaintiffs visited, and Paula

---

[2] The Court has discretion to decide how to resolve a motion to dismiss for lack of personal jurisdiction. *Ten Mile Indus. Park v. W. Plains Serv. Corp.*, 810 F.2d 1518, 1524 (10th Cir. 1987). Brehm filed its motion based only on the allegations in the amended complaint. Andrew responded with evidence. Brehm acknowledged that the Court could consider matters outside the pleadings but maintained that Andrew did not plead sufficient facts in the amended complaint. It is immaterial whether the Court considers Andrew's outside evidence. Andrew's allegations in the amended complaint are sufficient to establish a prima facie case. And even if they were not, any deficiency could be cured by amendment to add the facts contained in Andrew's attachments.

exchanged several emails with Brehm about the visit. Andrew had an IEP team meeting, hosted in Kansas. Brehm participated remotely via Zoom. Brehm requested information about Andrew from SKACD, USD 443, and Plaintiffs by multiple emails.

Brehm decided to accept Andrew as a student, and Brehm's admissions director emailed the acceptance to Plaintiffs and others. Brehm contracted with SKACD to provide Andrew with instructors and certain services, materials, and devices. Brehm then communicated its commitment to Plaintiffs in Kansas. Plaintiffs sent Andrew to Brehm because of Brehm's commitment. Brehm's administrators communicated with Paula and Nick via emails, calls, and remote meetings while Andrew attended Brehm. Paula and Nick usually received and responded to these communications from Kansas. Brehm administrators also communicated with the administration for SKACD in Kansas throughout the years about Andrew's education and/or services, materials, or devices. And SKACD confirmed in one email to Brehm that Andrew would remain a special education student in the Kansas database while attending Brehm in Illinois.

After Andrew's first year, Brehm contacted Plaintiffs in Kansas to say that Andrew would return for the 2022-2023 school year. Brehm invoiced SKACD for Andrew's services, room, and board, and SKACD paid with Kansas taxpayer funds. Andrew alleges that Brehm's conduct kept Andrew from progressing academically and graduating, resulting in his harm in Kansas.

These actions are sufficient to show Brehm purposefully directed its activities at a Kansas business or Kansas itself. *See Walden v. Fiore*, 571 U.S. 277, 285 (2014) (observing that the "'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there"). The actions are significant in both quantity and quality. This is not a case where the sole fact connecting Brehm to Kansas is that it is Plaintiffs' domicile. *Cf. id.* at 288 (noting that "a plaintiff's contacts with the defendant and forum" cannot

"drive the jurisdictional analysis"). Andrew has presented evidence suggesting that Kansas was the "focal point" of Brehm's allegedly discriminatory conduct. *Calder v. Jones*, 465 U.S. 783, 789 (1984); *cf. Newsome v. Gallacher*, 722 F.3d 1257, 1280-81 (10th Cir. 2013) (holding that an out-of-state attorney handling an out-of-state matter does not purposefully avail himself of the client's state's laws absent additional connections).

The Court acknowledges that entering a contract with a forum resident is not enough alone to create minimum contacts with the forum. *Burger King*, 471 U.S. at 478; *Benton v. Cameco Corp.*, 375 F.3d 1070, 1077 (10th Cir. 2004); *Pro Axess, Inc. v. Orlux Distrib., Inc.*, 428 F.3d 1270, 1277 (10th Cir. 2005). "However, 'with respect to interstate contractual obligations, . . . parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other State for the consequences of their activities.'" *Pro Axess, Inc.*, 428 F.3d at 1277 (quoting *Burger King*, 471 U.S. at 473). Courts consider factors like prior negotiations, contemplated future consequences, contractual terms, and course of dealing. *Burger King*, 471 U.S. at 479; *Dental Dynamics, LLC v. Jolly Dental Grp., LLC*, 946 F.3d 1223, 1230 (10th Cir. 2020) (noting that the Supreme Court rejects "mechanical tests" and instead looks to the overall interaction between the parties).

The nature of the contract between Brehm and SKACD is not a basic, everyday contract. It created meaningful contacts and relationships not only between SKACD and Brehm, but also between Andrew and Brehm, as the contract was for his benefit. It was ongoing and required close and continued contact between the parties. *But see Anzures v. Flagship Rest. Grp.*, 819 F.3d 1277, 1281 (10th Cir. 2016) ("In short, defendants' suit-related conduct did not create any meaningful contacts with Colorado itself, and the fact that Anzures was affected in Colorado (because he resides there) is insufficient to authorize personal jurisdiction over defendants.").

In sum, Andrew has presented evidence supporting a conclusion that Brehm "reach[ed] out beyond one state and create[d] continuing relationships and obligations with citizens of another state." *Pro Axess, Inc.*, 428 F.3d at 1277 (internal quotation and citation omitted). Brehm offers nothing to contradict this conclusion. Andrew has therefore met his burden of presenting facts suggesting that, based on "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing," *Burger King*, 471 U.S. at 479, Brehm "purposefully availed" itself of the privilege and obligations of doing business in Kansas.

There is a second step to the specific personal-jurisdiction inquiry. The Court next examines whether Brehm shows that exercising jurisdiction would violate traditional notions of fair play and substantial justice. But Brehm barely mentions this part of the standard and does not make any arguments about it or present any evidence.

Brehm's motion says this about personal jurisdiction:

> Defendant Brehm is an Illinois not-for-profit limited liability company doing business in the State of Illinois. Plaintiff Andrew Mueting resided in and attended Brehm in the State of Illinois. The contract at issue in Count V of Plaintiffs' Amended Complaint (ECF No. 30) is a State of Illinois form contract. Plaintiffs present no factual allegations – no minimal contacts or other facts – that would support personal jurisdiction over Defendant Brehm in the State of Kansas. Fed. R. Civ. P. 4(k)(1)(a); *International Shoe v. Washington*, 326 US 310 (1945). Accordingly, no personal jurisdiction can be exercised over Defendant Brehm.

Doc. 46 at 4-5. Brehm's reply brief is similarly concise:

> Plaintiff Andrew Mueting does not refute that he resided in and attended Brehm in the State of Illinois. Nor does he refute that Defendant Brehm is an Illinois not-for-profit limited liability company doing business in the State of Illinois or that the contract at issue is a State of Illinois form contract which was to be entirely performed in the State of Illinois. There are no factual allegations that establish minimum contacts with the State of Kansas sufficient to establish personal jurisdiction over Defendant Brehm in this

9

> State. Accordingly, dismissal for lack of personal jurisdiction is warranted.

Doc. 67 at 2.

The burden is on Brehm at this step of the analysis, and Brehm fails to meet that burden. Brehm has given the Court no basis on which to find that that exercising jurisdiction would violate traditional notions of fair play and substantial justice. The Court denies Brehm's motion to dismiss based on lack of personal jurisdiction.

### B. Breach of Contract or Educational Malpractice

Brehm contends that Andrew's third-party breach-of-contract claim is a thinly veiled educational malpractice claim. Brehm maintains that Andrew's claim is that Brehm failed to provide him with an appropriate education. It is not, according to Brehm, a claim that Brehm breached its contract because it did not provide specific goods or services.

Courts have generally elected not to recognize educational malpractice claims. *See Ross v. Creighton Univ.*, 957 F.2d 410, 414 (7th Cir. 1992) (collecting cases); *Gally v. Columbia Univ.*, 22 F. Supp. 2d 199, 207 (S.D.N.Y. 1998). Regardless of how a claim is labeled, courts have declined to review educational policy and procedures. *Jamieson v. Vatterott Educ. Ctr., Inc.*, 473 F. Supp. 2d 1159, 1160 (D. Kan. 2007).[3] But courts have recognized breach-of-contract claims that rely on specific provisions of an agreement or the provision of particular services. *See, e.g.*, *id.*; *Ross*, 957 F.2d at 425-26; *Miller v. Loyola Univ. of New Orleans*, 829 So. 2d 1057, 1061 (La. Ct. App. 2002). *Ross* noted a distinction between a breach-of-contract claim that an institution "failed to perform adequately a promised educational service" (not plausible) and a claim that "it failed to perform that service at all" (plausible). 957 F.2d at 417.

---

[3] Brehm represents that the law is the same whether Kansas law or Illinois law governs.

Andrew pleads that Brehm failed to provide specific devices, services, and materials as required under its contract with SKACD. Brehm promised to provide Andrew with "a program of special education, related services, and/or room and board in accordance with the student's Individualized Education Program." Doc. 30 ¶ 188. The contract specifically required Brehm to provide Andrew with a Teacher for Visually Impaired ("TVI") and Orientation & Mobility ("O&M") related service providers. *Id.* ¶ 189. Andrew alleges that Brehm breached the contract when it failed to provide a TVI and O&M, along with other "special education and related services." *Id.* ¶ 194; *see also id.* ¶¶ 65, 70-73, 121-24, 140-41, 194.

These claims are based on the failure to provide specific services, materials, and aids. Courts have found similar allegations to state a plausible claim for breach of contract. *See, e.g.*, *Jamieson*, 473 F. Supp. 2d at 1158-60 (denying motion to dismiss contract claim for failure to provide certain hours or weeks of instruction); *Gradeless v. Kan. State Univ.*, 2023 WL 2536643, at *8-9 (D. Kan. 2023) (denying motion to dismiss contract claim for breach of provision in student handbook); *Houston v. Mile High Adventist Acad.*, 846 F. Supp. 1449, 1456-57 (D. Colo. 1994) (noting that a viable contract claim must be based on "specifically promised educational services").

Brehm's case citations do not change this outcome. Brehm cites cases that relied on the general (correct) principle that a plaintiff must allege more than that he did not receive a "good enough" education. *See, e.g.*, *Lucero v. Curators of the Univ. of Mo.*, 400 S.W.3d 1, 8 (Mo. Ct. App. 2013) (policies expressing school's "aspiration to provide a positive work and learning environment" and "procedures for addressing faculty irresponsibility charges" could not form the basis for a breach-of-contract claim); *Miller*, 829 So. 2d at 1061 (rescheduling a course time not a failure to provide a guaranteed service); *Gally*, 22 F. Supp. 2d at 207-08 (no contractual obligations based on "general promises about ethical standards," a statement that students should receive equal

and fair treatment, or an academic policy stating that grades would be reviewed at the end of the academic year). Andrew's claim is distinguishable, as he identified specific, identifiable services that Brehm failed to provide under its contract. Andrew states a plausible claim for breach of contract.

## IV. CONCLUSION

Andrew has met his burden to show this Court has personal jurisdiction over Brehm. And he has plausibly stated a claim for breach of contract. Brehm's other arguments in its motion are moot.

THE COURT THEREFORE ORDERS that Brehm's motion to dismiss (Doc. 45) is DENIED.

IT IS SO ORDERED.

Dated: May 6, 2025                                /s/ *Holly L. Teeter*
                                                                  HOLLY L. TEETER
                                                                  UNITED STATES DISTRICT JUDGE